You're ready, we are. May it please the court, Bob Durker for the City of St. Louis. We are here this morning to urge this court to remind the district court of the limits of federal equitable jurisdiction in the context of civil disorder situations. As I prepared for argument in this case, I took it into my head to look at John Adams' speech for the defense in the Boston Massacre case, which Mr. Rothert will probably say is an apt analogy to the situation in St. Louis, but I looked at John Adams' speech for a different reason. Why would this vigorous champion of liberty take up the defense of those soldiers? And I think in reading his speech for the defense, I realized that he took up that case because he felt, I think correctly, that the tyranny of the mob can be every bit as treacherous to liberty as the tyranny of the state. I think in this case we have an illustration of a situation which is at the confluence of a number of principles and constitutional provisions. It's at the confluence of the Fourth and First Amendments and the confluence of the rigorous analysis demanded by Rule 23 and Section 1983 in analyzing the right to equitable relief. We submit that the plaintiffs in this case are in precisely the same situation as the plaintiffs in O'Shea v. Littleton, Rizzo v. Goode, and Los Angeles v. Lyons. We think that they are attempting to have the district court become the superintendent of police in the city based on hypothetical and speculative potential future injury. We feel that they did not demonstrate the kind of irreparable harm that would entitle them to the kind of equitable relief that the district court granted. And I have to say that I do not think that the district court was irrational in the order that she crafted. I think that it was a reasonable order, but I think it was an order that did not and should not emanate from a district court. In order to get around Lyons and Rizzo and O'Shea, the plaintiffs and the district court have attempted to paper that problem over with a conclusion that there is a custom in the city of St. Louis of police officers pepper spraying peaceful demonstrators and issuing vague and unintelligible orders to disperse. And one of the reasons that I inflicted the massive record on the district court and on this court was to give both courts a full and as complete a picture of a video picture of what happened in the city of St. Louis in September of 2017 and how the police dealt with ongoing, continuing protests, marches, and in some cases violence. And the reason that I felt that the video was important and why I importuned the district court to dissolve the preliminary injunction on the basis of lack of standing was that I think the video evidence demonstrates conclusively that there is no custom. There is no practice. The video demonstrates and we did put together what I call some highlight reels which were included in the record and which we attempted to make a fair sampling of what was going on that particular weekend. And I think the video shows that there were many marches, there were many protests in the streets, and for the most part the police escorted those protests and there was no evidence of the use of force on any regular organized basis. The district court focused on the night of September 17th when there was a mass arrest and undoubtedly the video shows pepper spray was used and I will not attempt to say that it was always used correctly but I think that it was not used to disperse peaceful protesters. This was in the course of arrests and I think that to the extent that the pepper spray was used, certainly we are defending damage suits that are based on claims that it was used improperly. I think that illustrates another point with regard to the federal equitable jurisdiction and I think O'Shea V. Littleton makes the remark that the standing issue shades into the authority of the court to grant equitable relief and shades into the issue of irreparable harm. We do not think that the record shows that the plaintiffs can make the requisite showing of likelihood of irreparable harm and they certainly have not made a showing that there are no adequate remedies at law. The ordinances that were issued were not found invalid by the district court. The appellees make casual references to defective ordinances but I would point out that even if the city ordinances were defective, there are state statutes regarding unlawful assembly and impeding traffic which were the subject, could have been the subject of enforcement. I think in this context it's important to emphasize the teaching of Nieves v. Bartlett in which the Supreme Court, I think, has made it quite clear that you look at the Fourth Amendment before you try to determine if there's a First Amendment violation. Subjective reasons of arresting officers are irrelevant if there is probable cause. Mr. Durker, a question there. I noted in the record there's reference to something called the Templeton Settlement Agreement. Yes. Could you touch on that? It seemed to involve these similar allegations and issues. Is that still in effect? What does it cover? Is that still in effect and are there other settlement agreements out there pertaining to the police department with respect to the use of force? The Templeton Decree expired by its own terms but functionally it is still in force because it is embodied in the standing orders of the police department. I think it's worthwhile to point out the city settled and consented to the order in Templeton and embodied its terms in the use of force policies of the city which to me refutes the notion that the city has a custom, a policy, of misusing pepper spray in civil disorder situations. And yet the Templeton Decree is used against us, a settlement that we entered into in good faith, as more evidence that the city violates the Constitution. The city's standing orders of the use of force, including the use of pepper spray, were explored in the district court and they were part of the record. Judge Perry found no fault with those. She found fault with the police department's implementation or observance of those orders. But I think that the policy, as far as the record goes, of the city of St. Louis with regard to protests and the use of force is entirely within constitutional standards. And I think the problem in this case is that the plaintiffs wish to substitute the district court for the police commissioner and the complaint, the district judge did not embrace everything that the complaint asked for, but the complaint would ask for a structural injunction which, as I quoted Judge Easterbrook in the petition for the 23F review, Judge Easterbrook commented that the time for structural injunctions to control the executive management of police departments and law enforcement has passed, and we think that this is the kind of situation where the district court is not in a position to make the kinds of judgments that have to be made by the police in the field. And I think that the district court's own, the relief the district court fashioned with regard to declaring unlawful assemblies, as one of our witnesses, the commander of the civil disobedience team, commented, dispersing is not rocket science. You go home. People go their own way. And you don't just tell a mob, okay, move from this corner three blocks down and remain a mob. And I think the district court's standards that it's imposed on the preliminary injunction, if those standards were embodied in an ordinance, I have a feeling Mr. Rothert would find fault with that ordinance. So I think that the difficulty here is that, as the record demonstrates, the police were facing very fluid situations. There was an attack on the mayor's house, which the district court did not question the police response to that. And the district court had no fault to find with that. Well, I think that demonstrates that what we're dealing with here is the civil disorder equivalent of the chokehold case. The district court was determined that the police department did not handle the mass arrest at Tucker and Washington on the 17th of September in a proper manner. And the district court decided that it would write the rules for the future. And I think the district court enjoined things that did not happen. Yes, again, there was pepper spray. And Mr. Rothert, and I don't blame him, has cited the very distressing incident in which some rogue officers beat up who they thought was a protester and turned out to be an undercover police officer. But I think that incident in and of itself illustrates that you contrast that incident with the video record of the discipline and restraint demonstrated by the police overall. And you also bear in mind that those officers have been indicted, that the remedies of damages, the remedies of criminal prosecution are real. And they operate to constrain the activities of the police in enforcing the law in the context of mass civil disobedience. And I think the issue we made with regard to the propriety of the class representatives further illustrates the standing issue. Mr. Mobley was not recording a protest. He was recording a chance encounter by police with two individuals on a street. He was accosted, his phone was seized, but then it was returned and he went on his way. And Ms. Ahmad, you know, the district court authorized her to be a representative of the class. But in the district court's order on the preliminary injunction, you know, she excluded Ms. Ahmad from the categories of lawful, peaceful protest. Ms. Ahmad was pepper-sprayed when she was blocking a police bus and the police were trying to de-escalate the situation. And the officer who sprayed her had a choice of either going hands-on and physically removing her or using pepper spray. He chose to use pepper spray and he got her out of the way. And I think that was an entirely legitimate use of force. But apart from that, it illustrates the adventitious nature of any of these uses of force. And I think that you cannot, you know, Ms. Ahmad certainly has not said she plans to blockade buses in the future. And, you know, we have no reason to believe that protests in the future will be the subject of, you know, a policy, a custom of always pepper-spraying peaceful demonstrators and always giving unintelligible dispersal orders. And I think the footnote 7 in the Lyons case, which I happened to read last night and its import struck me somewhat more forcibly, was that even if there was a policy of having the police apply certain types of force always in certain situations, the plaintiffs have to show that they are likely to suffer from this practice in the future. And Mr. Mobley certainly has not demonstrated any likelihood that he's going to suffer from any unconstitutional practice in the future. Ms. Ahmad certainly has not. And Ms. Lucek is, you know, an observer. She doesn't claim to be a protester. So I think that the sum and substance of this is that there is no standing and that the district court should be reversed. I would also point out, and I admit it's a rather novel issue, which struck me as I was reviewing the case when I got into it years ago, having, like Judge Arnold, flunked retirement. But I think that it's important to point out that certifying a class for injunctive relief in this context is going to have, it threatens the city's right to trial by jury in the pending damage suits, including a class action damage suit. And so I think the, as I mentioned before, the confluence of all of these principles strongly suggests that the district court should be reversed. And I will reserve the rest of my time for rebuttal if I may. Very good. Thank you, Mr. Rothkard. May it please the court. This is a challenge to customs of the St. Louis police toward those who assemble to criticize them. Three years ago. Mr. Rothkard, let me ask you at the start something that seems to me, that's important to me at least. In your view, could an individual St. Louis police officer be subject to contempt of court at the behest of any class member for violating any provision of this injunction? No. Tell me the provision of the injunction that makes that clear. Because it's hard to find the end of the court's opinion, doesn't it? I believe the injunction itself, there's a separate document that's the injunction separate from the, that was entered the same day, right after the memorandum in order. And the enjoyment is against the defendant, the city. And so I believe the city is the defendant in this case, and it is the city's customs that are being challenged in this case. And so any contempt for maintaining those customs would run against the city, not the individual officer. Is there any individual that could be held in contempt? I don't think it's an initial matter there could be. Perhaps if the city were called to account for violating the injunction and then, you know, a remedial order was entered. And then there was someone high up enough in the police department who was obstructing the remedial order. Potentially there could be contempt for that person, I would think. That person would not have the benefit of collectively bargained protections against arbitrary discipline, I take it. And that person would not have the protections of qualified immunity in a damage case. Correct? They would not have, if they're held in contempt, well, I assume they would be someone who was outside the bargaining unit in the police department. If we're talking about someone who's implementing customs. But as the second thing, they would not have qualified immunity. A contempt action would not be a damages case. And I don't know why they would have qualified immunity. So we've managed to avoid the Supreme Court protection. Because equitable remedies, of course, can include monetary sanctions. Yes. Everybody thinks equity is just don't do something in the future. But equitable powers are much broader, at least at times, much broader than that. So the district court has trumped qualified immunity here. I don't think that's true at all. At least potentially, in the order as worded. If there was a knowing violation of an injunction, I think that that would be very similar to qualified immunity. Because it would be clearly established what the law is and that there's an injunction telling you. Clearly established law is the injunction. Yes. So you would have to show someone knew what the injunction, contempt is hard. You would have to show someone knew what the injunction was and knowingly violated that. But you wouldn't have to show the conduct violating clearly established Supreme Court law, constitutional law. You just have to show that there was a knowing violation of what this district judge thought should be the law. That is correct for contempt. Okay, great. But we are challenging policies here. Or not policies, customs here. One is of authorizing. The city authorizes officers to use unfettered discretion, declare an unlawful assembly beyond when the law allows an unlawful assembly to be declared. And based on 20 witnesses, live witnesses, including the defendants, the district court found we're likely to prevail that that custom exists. Another policy authorizing any officer to give unfettered discretion to give dispersal orders that can be retaliatory. That can be vague. And then to execute them using force without notice and without a chance to comply. And also a custom of authorizing individual officers to use chemical agents without warning on citizens engaged in criminal expressive activity, including for retaliatory reasons. And the evidence... Let me ask you this, Mr. Rothkard. I get to pour through this extensive record, but is there documentary evidence of the customs you're talking about? Documentary. There is... The policies that are written, the ordinance, for instance, on an unlawful assembly is fine. The way it is written is probably constitutional. The testimony from the defendants, both from the plaintiffs who experienced it and the defendants on what their authority is and how they interpret the ordinance, is that officers have unfettered discretion to declare an unlawful assembly even where there's no violence, force, or threat of violence or force. And where there's any violation of law, even if that violation of the law is congregating on a sidewalk or in a street where there's no actual obstruction of traffic. So that's in the testimony. In fact, in the city of St. Louis, it's very similar to the situation in Cox versus Louisiana, going way back, in that the local laws are construed and practiced by local officials in a way that gives them unfettered discretion to decide when an assembly must end and when a protest must end. And unsurprisingly, perhaps, that is exercised more partially when the police themselves are the subject of the protests. And these customs are not just one weekend in September of 2017. There's certainly quite a bit of evidence about that because it was right before the preliminary injunction was heard. But the testimony is that these same customs were in the years before and in the weeks after the complaint was filed. And even going back to the incidents in 2012, which gave rise to that Templeton settlement. As Mr. Gorker alluded to, there was one protester who was violating no law and who was within a few blocks of where an officer had arbitrarily used his authority to declare an unlawful assembly and then had heard that there was a dispersal order and tried to comply with that and ran into some other officers a few blocks away and saw him recorded. Has that person commenced the damage action? Yes. But that person was beat up, sprayed, and his phone destroyed. But he was not a protester. It turned out he was an undercover police officer pretending to be a protester. But his testimony is not that different than Judge Perry heard from more than a dozen protesters who have experienced similar things. The day after that undercover officer was beat up, two of the officers who attacked him exchanged text messages. The first said, nothing we haven't done, and if it was a protester, it wouldn't matter. The reply was correct. That is pretty strong evidence that this is not a one-off thing. This is a custom, and certainly at the preliminary injunction stage, we have made a sufficient showing that we're likely to show that these customs are real and that anyone protesting in the city of St. Louis is subject to facing these customs. Mr. Rothart, I've wondered about this. There's a state statute on unlawful assembly. Yes. There's also a St. Louis city ordinance with respect to unlawful assembly. But I saw in the material, there's repeated reference to declaring an unlawful assembly. Where does this concept of declaring an unlawful assembly or the requirement that the unlawful assembly must be declared by someone, where does that come from? What's the origins of that? That's a prerequisite to arresting someone for refusing to disperse. The dispersal law requires where there's been an unlawful assembly. I don't know if it uses the word declared, but it says that where there's been an unlawful assembly, an officer may order dispersal. It becomes a prerequisite for that kind of action. As I read this, there seemed to be this idea that someone in authority in the command structure must declare a particular situation as an unlawful assembly. As opposed to officers simply being able to recognize that the unlawful assembly statute and ordinance have been violated and taking enforcement action. The testimony at the preliminary injunction hearing was that any officer has discretion to determine unlawful assembly. They could make arrests then or they can declare an unlawful assembly and order dispersal. And then arrest people for failing to disperse. The city of course did not appeal the preliminary injunction. There wouldn't be a preliminary injunction now, but the city succeeded six weeks before trial was scheduled, which was 13 months ago, in staying the proceedings with the agreement that the preliminary injunction would remain in effect. What the plaintiffs are asking for here is to amass much more evidence doing discovery and to send us back for a trial on the merits. So we can determine injunctive relief, which seems to have worked pretty well in the three years in between, is still necessary and should remain in effect. I think that on the standing point, Lyons, the city relies on Lyons, and we think that is different because in Lyons he did not authorize that there had been unconstitutional custom authorizing chokeholds. And as Mr. Berker noted, that he would be likely to face a chokehold again. Here we are alleging that these customs authorize unconstitutional conduct on behalf of officers, and that people who choose to protest again, which all these class members have said they would do, will face and be exposed to those customs again when they protest. There are two U.S. Supreme Court cases that have distinguished Lyons. I think they're both helpful here. Friends of Earth against Laidlaw distinguished Lyons because the unlawful conduct was occurring at the time the complaint was filed. This case was filed on September 22nd, and the preliminary injunction evidence shows that the allegedly unconstitutional customs continued all the way until the issuance of the preliminary injunction. Heather DeMine encountered them in late September, Stephen Hoffman in October. The Supreme Court also distinguished Lyons in County of Riverside against McLaughlin. And there, that was about people being held without bail hearings. The court found that even assuming the named plaintiff's standing had distinguished, standing was preserved because a class was certified. And here there's no evidence that the chill that the plaintiffs are experiencing went away, but there is a class certified, and that should take care of any standing problems. I was going to ask you about that. What is the benefit of class certification in this injunctive case? Well, if we are correct that these customs exist and are unconstitutional, then resolution of that question in a single case resulting in a singular prospective relief is efficient. It results in a single injunction or declaratory judgment that would provide relief from the customs for each member of the class and avoid the city being subjected to repetitive litigation, seeking prospective relief, and perhaps dozens of different injunctions targeting the same customs, perhaps in different ways. You've just told me what I thought. There's no benefit. This is just messing up a case that ought to proceed. Now, if there's no standing and this case goes away for that reason, then perhaps you need some kind of a punitive class that can establish what these plaintiffs can't. But I don't understand. At this point in time, in this case, I see nothing other than complications and further delay from certifying a class. Educate me. Well, one problem is later, as we've experienced with injunctions in the 2014 area against other municipalities, under this court's precedence, it's hard for third parties to enforce injunctions. So if there's not a class, then only those people who are named as plaintiffs are going to be able to enforce the injunctions if the customs should be used in the future. Wait a minute. So we've got to litigate that. In order to enter injunctive relief on behalf of the class, we have to litigate whether people who would otherwise be third parties and have no standing to enforce it should be allowed to do it in this particular case. That strikes me as massively complicating matters. It's not complicated at all. It's exactly what a 23B... I'll tell you, it wouldn't be for me because I want demonstration that every class member who would otherwise be a third party should be entitled to directly enforce, including a protester who wanders in from who knows where. Well, that's the point of a 23B2 class and that's why Congress created it for civil rights cases when civil rights violations are occurring and where the claim is the same. Wait, wait. What's the Supreme Court B2 case that supports what you just said, injunction only, civil rights, and therefore we have to do it this way? I think that injunction only, it's Walmart versus Dukes, and this court's decision in DeBoer and Pestaco interpreting Walmart versus Dukes. Otherwise, a thousand people could sue the city, a thousand different people could sue the city, ask for an injunction, they'd get them because the customs exist, and there would be a thousand different injunctions. Class action has the benefit of, for prospective relief, has the benefit of there being a single order, a single injunction that would provide relief to all of the class. The class here is very narrow, it applies only to protesters engaged in non-violent, non-criminal activity, hardly the mob that John Adams was worried about. There's commonality for two reasons, because the truth or falsity of a common question or contention can be resolved on a case-wide basis. Our contention is that the alleged customs exist, that can be resolved or not on a case-wide basis. And whether those customs, if they exist, are unconstitutional can be decided on a case-wide basis also. And the same injury of chill, chilling effect as described by this court in Clare, is common for the members of the class. In DeBoer, this court said typicality is fairly easily met if the claims are similar. And here, again, we are talking about the same course of conduct that's being challenged, so the individual differences do not matter as much. In that way, this case is like Pistacco, which involved hepatitis C treatment. Certainly, individuals' medical conditions, the nuances of those, would affect exactly what treatment they would receive. But because the class was defined as challenging only the policy of excluding treatment with DAA drugs, this court affirmed. And, you know, this is different than a B3 class, too. A damages case, I acknowledge Harris v. Union Pacific, footnote 4, there would be a problem making this a class action in a damages case. Your Honor, the injunction is working well in the city of St. Louis. There is, we're ready for trial on the merits. There's no reason for the injunction to be dissolved. There have been protests this year without the kind of problems that have been faced in the previous 10 years in the city of St. Louis. To paraphrase someone else, throwing out this preliminary injunction now would be like throwing out an umbrella in a rainstorm because you're dry. We ask that the grant of class certification and the refusal to dissolve the preliminary injunction be affirmed and that this case be remanded for a prompt trial on the merits. Thank you. Mr. Gerker, yes, you've got some rebuttal time. Thank you, Your Honor. If it pleases the court, I would point out in response to one of Judge Shepard's earlier questions, I apologize if I'm crediting the wrong judge, but the district court's injunction says that the defendant's city of St. Louis and its agents, servants, employees, and representatives will not enforce any rule, policy, etc. I think that it's important to point out that when the Floyd riots erupted in the city of St. Louis and police officers were being shot, we were in constant communication to advise the police department with regard to the terms of the preliminary injunction. It was a serious problem for the police and it remains a serious problem because the police don't know the district judge's order. As I say, I think Judge Perry attempted to craft something that was reasonable, but in her very effort to craft something reasonable, she demonstrated that you can't craft this kind of an order to address these kinds of situations. I would say as far as the issue of custom and practice, there is a practice that the police do not arrest for unlawful assembly unless an unlawful assembly has first been declared. But the standard, the discretion that the police have is the same discretion they have in enforcing any other valid law or ordinance, probable cause. And the police could arrest a mob on probable cause to believe that an unlawful assembly is in progress with smashing of windows, shooting, there was no shooting in September 17, thank God, but the attack on the mayor's office, there is no question that those people could have been arrested without a declaration of an unlawful assembly. But the declaration is a, I will say that that could amount to a practice because the police use their discretion to try to enforce the law in a reasonable way. And probable cause does not become stale. If the police have probable cause to arrest, the timing of the arrest is within their discretion. But I would emphasize that what we're involved in here is a preliminary injunction that constrains the police in perhaps the most difficult situation for police officers to be in, short of having to go into a darkened building after an armed suspect. I think that it's important also to emphasize that the definition of the class that the district judge adopted, which was significantly different from that proposed by the plaintiffs, is completely amorphous. It applies to anybody who observes or participates in any kind of demonstration of First Amendment rights. And I submit that the record shows that after the 17th of September, there was another mass arrest on October the 3rd, before the preliminary injunction entered. And there was no pepper spray. This was a mob that had blocked the interstate highway. And they debauched onto another major thoroughfare, and they were arrested. And I think that there was ample probable cause to arrest them for the highway blockage. And the video evidence shows that the officers conducted themselves entirely professionally, and that there was no pepper spray. There was no promiscuous use of force. And, you know, frankly, the 17th of September, the police officers with the civil disobedience teams acknowledged it was not a model operation. It was not handled as well as the October 3rd mass arrest. And part of that was because the situation evolved, and the police had stood down the disobedience teams. And then the crowd reemerged, and a threat materialized again. And by the time forces could be assembled to accomplish the arrest, you had the scene that the district court saw. But I submit that regardless of whether that was a good or bad operation on the 17th of September, it nevertheless demonstrates that these things cannot be demonstrated at this time that the plaintiffs or the class will be subjected to any unconstitutional behavior in the future. And that's why we, I guess I didn't pay enough attention to my clock on the screen here, so I think my time is out. But I ask that the district court be reversed and remanded with instructions to dismiss. And at a minimum, the class should be decertified. I thank the court. Thank you, counsel. The case has been thoroughly briefed and very well argued. The argument has been helpful, and we will take the case that has its importance and difficulty under advisement.